```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION


STEVEN P. PROTZ,

          Plaintiff,
                                   CIVIL ACTION NO.
v.                                 1:13-cv-1281-JEC

BOCK & CLARK CORPORATION,

          Defendant.
```

## ORDER AND OPINION

This case is before the Court on plaintiff's Motion for Preliminary Injunction [6] and Motion to Expedite Hearing on Motions to Dismiss and for Preliminary Injunction [8] and on defendant's Motion to Dismiss [3].

**I. BACKGROUND**

Plaintiff was employed by defendant and terminated in February of this year.  When initially hired, he had signed an employment agreement that greatly restricted, if not totally eliminated, his ability to work for any business entity that might compete with defendant for a year after his departure from the company. Plaintiff now has an opportunity to work for a company that performs the same type of work that defendant does and in the same multi-state geographic region, including Georgia, where plaintiff had previously

worked. Unless these restrictions are removed, however, plaintiff will be unable to accept such a position.

Accordingly, plaintiff, who is a resident of Georgia, filed suit in the Fulton County Superior Court seeking a declaratory judgment striking these restrictions that will prevent him from accepting this pending position. Defendant removed the action to federal court.

The parties appear to agree that, were the merits of this case to be judged by Georgia law in effect at the time that plaintiff executed the agreement, plaintiff would certainly have shown a likelihood of success under that law, as the breadth of the employment agreement runs afoul of Georgia law and renders all of the restrictive covenants in the agreement subject to being struck. Likewise, plaintiff has a solid claim for irreparable injury as he is unemployed, and may remain in that status for as long as the restrictions are applied to him.

Plaintiff's problem, however, is that the agreement also indicated that any legal action concerning the agreement could only be brought in the Summit County, Ohio[1] Court of Common Pleas. Further, the agreement states that Ohio law governs any disputes concerning the agreement. Given this mandatory forum-selection clause, defendant has filed a motion to dismiss the case, arguing

---

[1] Akron is the seat of Summit County.

that, by filing in Georgia, plaintiff has filed this case in the wrong venue.

If defendant is correct, then this Court should not be the body considering plaintiff's law suit, and the case should be dismissed without prejudice to allow plaintiff to refile in Ohio state court, absent some procedural mechanism by the Court (which defendant says is lacking) to transfer the case there.  For this reason, the Court must first decide defendant's motion to dismiss before it can reach the question of plaintiff's motion for injunctive relief.

## II.  **MOTION TO DISMISS**

The construction of forum-selection clauses by federal courts is a matter of federal common law, not the state law of the state in which the federal court sits.  *Cornett v. Carrithers*, 465 Fed. App'x 841, 842 (11th Cir. 2012).  A forum-selection clause is "presumptively valid" and will be enforced unless the plaintiff makes a "'strong showing' that enforcement would be unfair or unreasonable." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).  In the Eleventh Circuit, such a showing is made only when: (1) the agreement was induced by fraud or overreaching; (2) the plaintiff would be deprived of his day in court because of inconvenience or unfairness, if the designated venue were honored; (3) the chosen law would deprive the plaintiff of a remedy; and (4) enforcement of the policy would contravene public policy.

3

*Id.*

In his response to defendant's motion to dismiss, plaintiff has not sufficiently asserted the first two grounds, but has, in effect, argued the latter two: that is, litigating in Ohio would deprive the plaintiff of a remedy and would contravene the public policy of Georgia, which is the state in which plaintiff brought suit, in which he lives, and in which he would be employed.

In arguing against enforcement of the forum-selection clause, plaintiff cites to Georgia cases holding that, even where there is a choice-of-law clause in a non-compete agreement, Georgia courts refuse to adhere to that clause and they instead evaluate these clauses according to Georgia law. As it is clear that a Georgia court would not enforce the restrictive covenants at issue here, at least under the Georgia law in effect at the time the employment agreement was made, plaintiff argues that it would contravene Georgia public policy (and perhaps also deprive plaintiff of a remedy) if plaintiff were forced to litigate this action in Ohio. In reply, defendant argues that plaintiff has failed to show that an Ohio court would likely ignore Georgia law--and its stronger public policy stance against enforcement of restrictive covenants, such as those present in this case--in the Ohio court's substantive evaluation of this case.

4

## III. <u>NEED FOR FURTHER BRIEFING</u>

The legal issues that arise from plaintiff's challenge to enforcement of the forum-selection clause (Ohio county court) and its companion choice-of-law clause (Ohio law) are extremely complex, and will require more briefing and analysis than plaintiff has thus far presented in his limited brief on this topic.  In spending many hours of its own time trying to get beyond the sparse briefing to unravel this multi-layered question, the Court has found that the task becomes more complex with additional research, not easier. Plaintiff signed the contract here and its provisions are presumed to be enforceable.  Thus, it is plaintiff who must shoulder the heavy burden of persuading the court that the parties' forum-selection clause should be ignored.

The time pressure created by the need to render as quick a decision as possible, given the possibility that plaintiff's job opportunity could disappear without a reasonably timely resolution of this case, means that this Court has not had the time to thoroughly analyze the cases that it has thus far found in its own research. That is the job of the parties, not the Court, as the undersigned has many time-sensitive matters for many other litigants and cannot stop everything it is doing to take on the role of general counsel for either side. Accordingly, the following discussion gives the parties the Court's shorthand interpretation of the many cases that it has

5

thus far quickly read, as a beginning point for them in submitting a more comprehensive brief on this matter.

The Court makes certain assumptions from the briefing thus far. Defendant does not disagree that the "old" Georgia law on non-compete type clauses controls here. That old law forbade "blue-penciling" of any overly broad restrictive covenant clauses in an employment contract. This meant that one drafting misstep by an employer, and the entire agreement would be struck, without the ability of the reviewing court to narrow the overly broad restrictive clause. The Court further assumes that the agreement at issue here was overly broad in some respects. Therefore, had there been no forum-selection clause, which means that this case could have been properly brought before a Georgia court, the latter (or a Georgia federal district court on removal) would have struck the agreement, or at least the violative provisions, and would have granted some type of injunctive relief.

The problem is that there is a forum-selection clause, as well as a choice-of-law clause. Were there no forum-selection clause, but only a choice-of-law provision, the answer would appear to be pretty straight-forward. In *Keener v. Convergys*, 342 F.3d 1264 (11th Cir. 2003), the Eleventh Circuit was reviewing a case that had been certified by the district court to the Georgia Supreme Court. As in this case, the Georgia district court was dealing with a non-

competition employment agreement which specified that Ohio law would control.  Applying Georgia conflicts of law rules, as clarified by the Georgia Supreme Court on certification, the district court concluded that the agreement violated Georgia public policy and that, as the plaintiff was living and working in Georgia, where the effects would be felt, Georgia's public policy concerns trumped Ohio law, even though the parties had contracted to apply that law.  *Id.* at 1268.  The Eleventh Circuit affirmed that part of the decision, but reversed the district court's nation-wide injunction, finding it to be too broad.

So, if we were facing only a choice-of-law clause, plaintiff would seem the likely victor.  As stated before, though, plaintiff first faces a challenge to venue in Georgia, as the contract specified that the case may be filed only in a Summit County, Ohio state court.  The question then becomes whether an Ohio court will recognize and adhere to the Georgia public policy or whether it will instead apply its own law,[2] without regard to Georgia law, to hold

---

[2] Another unanswered question that may or may not become important: does plaintiff have the right to remove the action filed by defendant in the Summit County court to the appropriate federal court in Ohio, if diversity jurisdiction so authorizes a removal, which it will, and notwithstanding the forum-selection clause setting out the state court as the forum in any dispute?  If so, and if plaintiff did decide to remove the case, this Court could then transfer this action to the federal court in Ohio where the defendant's state court action had been removed.  But absent a transfer, it is unclear that plaintiff will be able to open the door

7

that the agreement can be blue-pencilled.[3]

The parties should more thoroughly brief how an Ohio state court would determine which state's substantive law were to apply--Ohio or Georgia--were plaintiff's claims here dismissed without prejudice to plaintiff's right to refile in Summit County or to file a counterclaim in the action filed by defendant there.  This analysis should first look to how the Ohio court would apply its own conflict of law rules in determining the degree of deference that it will give to the parties' agreement that Ohio law will control all disputes.

That is, will an Ohio court simply apply its own substantive law on these non-compete employment agreements, which may or may not prejudice the plaintiff's ultimate prospects of success, or will the Ohio court instead go behind the parties' specification of Ohio law as controlling to determine whether its conflicts rules would give deference to Georgia law and to the latter state's former public policy disfavoring these types of employment contracts?

---

to Ohio's conflict rules.  *See Rode v. St. Jude Med., S.C., Inc.,* No. 1:06-cv-02448-WSD, 2006 WL 3762065 (N.D. Ga. Dec. 20, 2006)(Duffey, J.)(where defendant employer sought a tranfer to the designated forum of Minnesota, court suggested that Minnesota's duty to examine its own conflicts rules might not arise were the case not being transferred there.) *Id.*, at *4.

[3] Another question is whether Ohio law concerning the proper breadth of a non-competition clause is equivalent to Georgia's, and does that matter in this analysis if it turns out that Ohio is deemed the proper forum?

8

Plaintiff should attempt to identify cases that will support his argument that Ohio will ignore the Georgia law, in its construction of non-competition clauses as well as in its expressed public policy of striking over-broad agreements.[4]  Similarly, defendant should explore the area to support its argument that Ohio would defer to Georgia law in this area.

## IV.  TIMELINE

Each party should submit a supplemental brief that will better educate the court on the caselaw in this area by **FRIDAY, MAY 10, 5:00 p.m.**  The Court will hear argument from counsel on the pending motion to dismiss and, if that motion is denied, on plaintiff's pending motion for injunctive relief, on **TUESDAY, MAY 14, 1:30 p.m.**

Given the complexity and uncertainty of these issues, and the expense that each party will incur should it continue to litigate them, the Court urges the parties to attempt to find a way to resolve this case by narrowing the restrictive covenants in a way that will substantially protect the defendant, while at the same time giving the plaintiff a right to earn a living.

---

[4]  Counsel should explain the cases, and not just offer a cite for the court to have to then figure out the argument being made.

9

SO ORDERED, this 7th day of MAY, 2013.


                              /s/ Julie E. Carnes
                              JULIE E. CARNES
                              CHIEF UNITED STATES DISTRICT JUDGE